(C.D. 2562)

NAUMES FORWARDING SERVICE *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 11, 1965)

*Wallace & Schwartz* (*Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, described on the invoices as 4-panel screens, was assessed with duty at 40 per centum ad valorem under paragraph 411 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as wooden screens. It is claimed in all of the protests that the merchandise is properly dutiable at 16⅔ per centum ad valorem under paragraph 412 of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as manufactures of wood. Three of the protests claim in addition that the merchandise is properly dutiable at 10 per centum ad valorem under paragraph 1547, as modified, apparently as paintings. The latter claim was not mentioned at the trial or in the briefs and is deemed abandoned.

The pertinent provisions of the tariff act, as modified, are as follows:

Par. 411 [as modified by T.D. 53865 and T.D. 53877]. Porch and window blinds, baskets, bags, chair seats, curtains, shades, or screens, any of the foregoing wholly or in chief value of bamboo, wood, straw, papier-mache, palm leaf, or compositions of wood, not specially provided for:

     *       *       *       *       *       *       *

    Other (except baskets and bags) _____ 40% ad val.

Par. 412 [as modified by T.D. 52373 and T.D. 52476]. Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

     *       *       *       *       *       *       *

    Other (except * * *) _____ 16⅔% ad val.

It was stipulated at the trial that the merchandise was in chief value of wood and the protests were abandoned as to all merchandise other than that described as 4-panel screens. Typical descriptions of the merchandise are found on the invoice covered by entry No. 9756, for example:

3 pcs.   No. 3823–G
          4 panels screen with hand painted design on imi-
             tation gold leaf ground. 18″ ea. w. x 36″ ht.
1  "   No. 3823–S
          —ditto—but imitation silver leaf ground.

This item number and item Nos. 4339 and 4193 on that invoice also appear on the invoice covered by entry No. 15533, but the merchandise

there had different sized panels: 48 inches high by 24 inches wide and 72 inches high by 12 inches wide.

A sample representative of the imported merchandise, although in a different design, was received in evidence as plaintiff's exhibit 1. It consists of an article composed of four panels, having a framework of wood, each approximately 36 inches high by 18 inches wide by ¾ of an inch thick. The panels are united by means of continuous pieces of material front and back. The front portion is decorated with a continuous picture or scene depicting ducks, birds, and grasses on a gold background. The entire picture is surrounded by a narrow border resembling brocade, a wider border, and the black framework of the panel. The panels are joined in such a manner that the article is flexible, can be folded, and can be stood on the floor accordion fashion. There are metal pieces on the four corners and the two ends, but no hooks or fasteners of any kind are attached.

Sadie Feika, called as a witness for the plaintiff, testified that she is the president and owner of Feika Imports, importer of the within merchandise. She has been in the importing business for 45 years, during which time she made 26 trips to Japan, and about 15 years ago began bringing in screens. She testified:

Well, we attempt to follow design trends. There is a need for something to go above a couch as a decorative accessory on a wall or above a buffet in a dining room, and these were made originally in Japan as screens to screen tables because they sat on the floor to eat. This is in no sense a screen, but a decorative accessory to be placed on the wall.

Q. Tell us what you had to do with respect to the purchase of these items?— A. I went to Japan and to Kyoto and worked with our commissionaire, looked at books of designs of old screens, adapted them also on gold paper, and furnished color. We attempt to use color that is decoratively acceptable.

Miss Feika stated that plaintiff's exhibit 1 is a so-called 4-panel screen; that all are in the same size, 3 feet by 6 feet; that the background is the same, the wood is the same, the paper is the same, but the design and color differ. In some cases, gold paper is used and in some cases silver. The pictures are hand painted and are almost always different. A group of photographs representing available designs for panels, but not covering the merchandise in issue, was received in evidence as plaintiff's collective exhibit 2. The witness stated that they were new designs of screens submitted by a commissionaire in the Orient from which she might order. Most of them depict more elaborate designs than that of plaintiff's exhibit 1.

Miss Feika testified that she has been buying and selling screen panels for the last 15 years. They are bought by decorators, and the decorating departments of stores, such as Marshall Field & Co., Carson Pirie Scott, Bloomingdale's, and Altman's. She has seen them in homes in Chicago, New York, Colorado, and California. One was

hung on a wall above a couch, another above a buffet in a dining room, and another above a long narrow console in a hallway. The witness was not asked and did not state how they were attached to the walls, but she said she had never seen them used in any other manner except on walls for decorative effect. She had never seen them used on the floor. Her attention was called to the invoice in entry No. 3408, which included item Nos. 4190/4 and 4190/6. She said that they were the same type of merchandise, but that the designations denoted that one had four individual panels and the other six individual panels. The 6-panel article would be 9 feet long and would be used on a larger wall area. She had never seen those used on a floor. She had never seen these articles in longer lengths than six panels, and, although she had seen them in two panels, she had never imported them. She was not interrogated as to the screens having a greater height on the invoice covered by entry No. 15533.

The question before the court is whether the imported articles are "screens" within the meaning of that term, as used in paragraph 411, *supra*. Plaintiff relies upon *United Enterprises et al.* v. *United States*, 41 Cust. Ct. 73, C.D. 2023, appeal dismissed 46 CCPA 151, which involved so-called "shoji" panels which were classified by the collector as screens, but which the court held consisted of materials which had not been advanced to the point where their use as screens was made clear or their utility for other purposes destroyed. In the course of the opinion, the court discussed the meaning of the word "screen" in paragraph 411, *supra*, and stated that, while the term was of wide application and embraced articles of many different materials and in many different forms, it did not cover literally anything in the nature of a partition, curtain, shelter, shield, protection, or a thing which serves to conceal. It concluded that the specific articles commonly known as screens were more aptly described in the following language in Funk & Wagnalls New Standard Dictionary, 1942 edition:

* * * (1) A thin structure placed before objects to conceal, separate, or shield them; sometimes a frame covered with paper or cloth, and usually movable; * * * (2) Arch. A partition, perclose, or other construction properly light, and permissibly latticed, or of openwork, dividing one part of a building, as choir, chancel, or chapel, from another; as, a choir-screen; an organ-screen.

The court then stated, as to the "shoji" panels:

* * * In their use, they may be solidly fixed in position, as when used as walls or partitions between rooms, or as dividers within rooms, or fastened to walls for purely decorative purposes, or with the utilitarian purpose also of covering all openings or unsightly places, or for similar purposes when fastened to ceilings. They may also be used mounted on tracks at one end or both ends to serve as sliding doors for rooms, closets, or furniture, or as sliding shutters or curtains, when mounted before windows, to diffuse light or shut out unsightly scenes or insure privacy. Lastly, they may be used in a manner that may be

termed as "free-standing," such as a number of panels being hinged together and used as folding floor screens.

The court also pointed out that the panels required the addition of some form of mounting or hardware to be made useful. Specifically, sliding doors or shutters required the addition of tracks, folding screens required the addition of hinges, and when the panels were used as partitions, light diffusers, decorations, and the like, they needed some form of fitting and mounting.

According to the Summary of Tariff Information, 1929 (p. 950), the blinds, curtains, shades, and screens covered by paragraph 411 embrace a wide variety of articles used as a shield from light, heat, wind, and to effect privacy. The types are numerous and range from the strictly practical to the purely artistic. In the Summaries of Tariff Information, 1948, it is stated (vol. 4, p. 80):

> The products covered by this summary include woven roll shades, venetian blinds, 2-, 3,- or 4-section folding screens, ornamental screens, and various other types of utility and ornamental blinds, curtains, shades, and screens. * * *
>
>    \*        \*        \*        \*        \*        \*        \*
>
> Folding screens, and screens of other types than those discussed above, are produced largely by furniture and specialty manufacturers. * * *

The Columbia Encyclopedia points out (p. 1781):

> * * * As an article of furniture, the folding sectional screen is of great antiquity, dating in China from the 2d cent. B.C. Widely used to adorn palaces and mansions, the screens of China and Japan were often gorgeous conceptions with carved wood frames, paneled and inlaid with jade or precious metals, or rich textiles, and the art of screen painting reached superb heights. The use of the folding screen, often showing Oriental influences, has continued to the present day, in various textiles, stamped or painted leathers, and other materials. * * *

See also the article on "Screens of China and Japan" in Encyclopaedia Britannica, volume 20. It is pointed out there that, in the 14th century, a new type of screen was introduced from Korea. The leaves (or sections) were joined by paper hinges which were built into the body of the screen before the silk or paper for painting was pasted on, and the brocade border extended over the composite whole. The tightly joined leaves made one surface for painting a picture.

The Encyclopedia of Furniture by Joseph Aronson contains a section on screens, stating (p. 165):

> Screens as furniture are ornamental frames of panels for protection from observation, draught, or the heat of a fire. The framework has variously been covered with leather, paper, textiles, etc., and may be made in only one panel or of several leaves or panels hinged together. * * *
>
> The earliest known screens occur in China in the 2nd century B.C. * * * Screens from this time on were painted with landscapes, texts, memorable events or simple scenes of every day activity; others were covered with embroidered silks, using natural forms and inscriptions. These were often made of many panels, some having as many as forty. The Japanese screens more

characteristically are of 6 panels, with the landscape pattern spread entirely across the whole, instead of each panel being framed and decorated independently as were the Chinese.

The sample of the merchandise here falls within the dictionary definition of "screen" in that it is a frame covered with paper or cloth and is movable. It corresponds to the description of oriental folding screens by the authorities cited. The witness herself testified that the imported articles were adapted from designs of old Japanese screens. They were invoiced and entered as screens and the witness and counsel for both parties referred to them as screens.

Plaintiff claims, however, that these articles are not "screens" on the ground that they are not used to conceal, separate, or shield objects, or to divide a room, but are used solely as a decorative article hung on walls. While Miss Feika testified that she had seen these articles used on walls and not on the floor, she mentioned only three or four actual observations. Her testimony discussed the sample, which was 36 by 18 inches, but did not refer to sizes 48 by 24 inches or 72 by 12 inches. It was not shown whether the nature of her business required her to be acquainted with the end use to which the merchandise was put by ultimate consumers, nor whether the few observations of use in homes she did make were on social or business occasions. Her sales having been to decorators, or the decorating departments of stores, not to ultimate consumers, it might be expected that the aesthetic ideas and training of decorators would control the end uses. It is common knowledge that consumers go to decorators and decorating departments when uncertain just what they want. It is not a situation where the importer, the witness here, would herself be active in exploring and developing end uses, and no such claim was made in her testimony.

The testimony is contradicted by the sample itself, which is a "potent witness." *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, 221, T.D. 45995; *Marshall Field & Co.* v. *United States*, 45 CCPA 72, 81, C.A.D. 676. In its condition as imported, it is adapted for use "free standing" on the floor, but not for attaching to a wall. For the latter use, its folding feature is of no value. The means by which such an article is affixed to a wall is not disclosed by the record. The fact that it is decorative does not indicate it is not a screen. It could be used to conceal objects, such as a fireplace when not in use, or small tables, or unsightly articles. The larger sizes might serve to separate one part of a room from another. While use may be of paramount importance in determining the identity of an article (*United States* v. *Quon Quon Company*, 46 CCPA 70, 73, C.A.D. 699), we do not think the weak use testimony here is sufficient to establish that these articles are not used as screens, when other factors, such as their shape, construction, and resemblance to the well-known oriental folding screen, proclaim that they are. *Cf. Vantine & Co.* v. *United States*, 3 Ct.

Cust. Appls. 488, T.D. 33124, which involved articles apparently conceded to be screens, described by the court as follows (pp. 488–489) :

There are several sizes of screens covered by the protests. The exhibit submitted to us, and which is said to be typical in construction of the importations, consists of four sections, each about 5 feet high and 20 inches wide, united by flexible connections so as to permit of folding, of easy moving, and of adjustment. The visible wooden frame of each section is about 1 inch wide and three-fourths of an inch in thickness and extends entirely around it. Into this frame and completely filling the space is inserted one taut panel of silk cloth fastened to a very light inner framework or form, which the panel entirely covers on the front side, while the back side is also covered by an ornamented fabric resembling cheesecloth, backed with paper. * * *

If there should be strong and convincing testimony that articles such as this merchandise at bar were chiefly used to hang on walls for decoration, it would be a serious question whether this would override the fact that the merchandise was bought and sold as screens and was commonly known as screens. The word "screen" might be held a use classification as applied to some articles, but not as to those referred to as screens in common speech. We need not decide such issues here.

For the reasons stated, we hold that the imported articles are properly dutiable under paragraph 411, as modified, *supra*, as screens in chief value of wood. The protests are overruled and judgment will be rendered for the defendant.