(C.D. 2582)

ASHEAR BROS., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided October 20, 1965)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This action is directed against the classification by the collector of customs at the port of New York of certain pure silk handkerchiefs under the provision for wearing apparel of every description, wholly or in chief value of silk, as prescribed in paragraph 1210 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and, accordingly, assessed with duty at 32½ per centum ad valorem.

By its protest, plaintiff claims said merchandise to be properly subject to duty at the rate of 27½ per centum ad valorem, as hemmed handkerchiefs, wholly or in chief value of silk, valued at more than $5 per dozen, under the provisions of paragraph 1209 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The pertinent portions of the provisions involved herein read as follows:

Paragraph 1210 of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of silk, and not specially provided for_____ 32½% ad val.

Paragraph 1209 of the Tariff Act of 1930, as modified by T.D. 51802, *supra:*

Handkerchiefs and woven mufflers, wholly or in chief value of silk, finished or unfinished, and valued at more than $5 per dozen:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Hemmed or hemstitched_____ 27½% ad val.

The record herein consists of the testimony of six witnesses called on behalf of plaintiff and four exhibits offered by plaintiff, as well as an oral stipulation, entered into by and between counsel for the respective parties, that the merchandise is hemmed and valued at over $5 per dozen. The record establishes that all of the witnesses called were well qualified, having had experience in the handkerchief industry prior to June 17, 1930, the date of the present tariff act, some extending back to 1909. They all testified that they had dealt with articles such as are involved herein throughout the United States prior to June 1930 as men's silk handerkchiefs chiefly used in the pocket of a man's jacket; that the general definitions given by the dictionary are not broad enough, in their opinion, since they do not include a handkerchief used for ornamentation in the pocket of a man's jacket; that they are never sold as a square and that the standard handkerchief discount of 3 per centum is given to this merchandise; that they are known, bought, and sold in the wholesale trade throughout the United States; that they have been known, both at present and prior to June 17, 1930, as men's silk handkerchiefs and are, on occasions, sold with a tie as sets.

The proof adduced herein was directed toward the establishment of a commercial designation which counsel for plaintiff deemed necessary, in view of the decision in *The Specialty House, Inc., and Bryant & Heffernan, Inc., et al.* v. *United States*, 32 Cust. Ct. 146, C.D. 1596, affirmed in *United States* v. *The Specialty House, Inc., Bryant & Heffernan, Inc., et al.*, 42 CCPA 136, C.A.D. 585. The merchandise involved in that case consisted of 17-inch silk squares of lightweight habutae silk, which were worn by women and girls as ornaments in various manners. This court, in its decision, quoted the following definition of a handkerchief from Webster's New International Dictionary, 1949, which was contained in the decision of *Geo. S. Bush & Co., Inc.* v. *United States*, 29 Cust. Ct. 395, Abstract 56928, and which reads as follows:

Handkerchief. 1. A small piece of cloth usually square and often embroidered or laced, carried for wiping the face, nose, or eyes. 2. A piece of cloth shaped like a handkerchief worn about the neck; a neckerchief; a neckcloth.

This court, based upon the samples of the articles involved therein and the evidence adduced therein, concluded that the merchandise there involved was not known and understood to be a handkerchief in the commerce of the United States in 1930, when Congress enacted the Tariff Act of 1930. Accordingly, under the principles enumerated in *Curtis* v. *Martin*, 44 U.S. 106, 11 L. ed. 516, that duty was imposed only upon the articles which were known as and understood to be in that instance "handkerchiefs," at or prior to the enactment of the Tariff Act of 1930, the claim of plaintiff that said squares were wearing apparel was sustained.

The appellate court found, based upon the record, that the term "handkerchief" had a commercial designation at or prior to June 17, 1930, which was limited to articles used to "wipe the face, nose, or eyes" and that said merchandise was not so used, but was used by women and girls as style and color accessories and known as scarves or squares.

The basic consideration of the court is the interpretation of the Tariff Act of 1930, as enacted by Congress. In such interpretation, it is presumed that the tariff act is written in the language of commerce of the United States and that such language is the common meaning of the term involved. The common meaning is the meaning as found in the dictionary and is presumed to coincide with the commercial designation (*Two Hundred Chests of Tea*, 22 U.S. 428, 6 L. ed. 128), unless a different meaning was ascribed to the term so used at the time of the enactment of said tariff act. It is, therefore, the burden of the party asserting a commercial designation to clearly establish that, in the trade, the involved merchandise had a meaning which differed from the common meaning. The party must, further, affirmatively establish that said tariff term had a meaning at or prior to June 17, 1930, which was definite, general, and uniform throughout the United States and that said term embraced the merchandise involved herein. Commercial designation is often claimed but not readily established. We find, however, that, in the instant case, plaintiff has established that the imported men's silk handkerchiefs are within the commercial meaning of the term "handkerchiefs" and, as such, properly subject to classification as "handkerchiefs" within the purview of paragraph 1209, *supra*, as claimed by plaintiff herein.

Proof of a commercial designation is a matter of fact to be established in each case. Hence, the decision in *The Specialty House, Inc.*, case, *supra*, was dictated by the type of merchandise and the record as made therein and, hence, is not controlling herein. The merchandise in the instant case differs as to type and use, and the record made herein, we believe, is sufficient to include within the commercial designation of the term "handkerchief" one which is used in the pocket of a man's jacket for ornamental purposes.

Judgment will be entered accordingly.