**Sanji KOBATA et al.**

v.

**UNITED STATES.**

**C. D. 4213; Protest Nos. 68/45792–23069 and 68/33923–22956.**

United States Customs Court, First Division.

May 6, 1971.

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen. (Bernard J. Babb, New York City, and Ralph A. Bontempo, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

The legal question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan in 1967. It is described on the invoices as "folding screen (byobu)" or "paper screen, 4–panels". The merchandise was classified by the customs officials as wood screens under item 206.67 of the Tariff Schedules of the United States, and was assessed with duty at the rate of 40 per centum ad valorem. The plaintiffs have protested the classification and claim that it is entitled to free entry since it is properly classifiable under item 765.03 of the tariff schedules, as amended by Public Law 89–651, as paintings, whether or not originals, executed wholly by hand.

The plaintiffs initially made several alternative claims in these protests, consolidated for purposes of trial. However, since the plaintiffs indicate in their brief that they rely solely on the claim for free entry under item 765.03, as paintings, all other claims are deemed to have been abandoned. The issue, therefore, is whether the merchandise at bar is to be assessed with duty as "wood screens", as classified by the customs officials, or whether it is entitled to free entry as "paintings", as claimed by plaintiffs.

The pertinent provisions of the Tariff Schedules of the United States may be conveniently set forth as follows:

*Classified under:*

"Wood blinds, shutters, screens, and shades, all the foregoing, with or without their hardware:

\* \* \* \* \* \*

206.67 Other ....... 40% ad val."

*Claimed under:*

Schedule 7, part 11, subpart A headnotes:

"1. This subpart does not cover—

\* \* \* \* \* \*

(ii) painted or decorated manufactured articles (such as, but not limited to, vases, cups, plates, screens, trays, cases, and chests);

\* \* \* \* \* \*

765.03 Paintings, pastels, drawings, and sketches, all the foregoing, whether or not originals, executed wholly by hand ........... Free"

At the trial, plaintiffs introduced into evidence two representative samples of the merchandise. It is described on the invoices as "folding screen" or "paper screen, 4–panels", and consists of a four panel screen, 36 inches high by 72 inches in width. Spread across all four panels of the screen there is painted by hand a Japanese landscape. Plaintiffs also introduced sample hardware, which is designed to be placed over the frame at the joints both to prevent the panels from folding, and to hang the merchandise on walls. In addition to the hanging devices, plaintiffs introduced photographs taken by witnesses showing actual uses made of the merchandise. Defendant introduced into evidence a collective exhibit consisting of photographs taken in the store of one of plaintiffs' witnesses.

These photographs show the manner in which the witness displayed the merchandise for sale.

Plaintiffs called seven witnesses at the trial all of whom were familiar with the merchandise and knew how it was made in Japan. The testimony was clear and consistent. First, a complete frame with four panels is put together to make a blank screen. This frame is then placed on the floor and the painter or artist, by hand, paints a picture on the paper extending across the entire screen. The artist in painting the picture or landscape, uses water colors or ink made out of a black material like lamp black and· glue. The testimony revealed that some artists will take from two to three hours to paint a landscape, whereas other artists may require twelve hours to several days. The picture is always signed with the name of the artist. None of the witnesses have ever seen two pictures to be identical because all of the paintings are painted by hand and are original paintings.

The screens, which were also referred to as "wall hangings" by the plaintiffs, vary in price depending upon their artistic value. The selling price may vary from $75 to $8,000.

All of the witnesses who described the use of the screens in question were unanimous in their testimony that, except for display purposes in stores, their use was only as "wall hangings". In fact, whenever sales were made of the merchandise in question, in 80 to 100% of the times the purchasers also purchased "hanging devices". It is clear, therefore, that the hardware is purchased so that the merchandise, whether referred to as "screens", "paintings" or "wall hangings", may be hung on walls.

Witnesses familiar with the merchandise have seen it used hanging on walls in homes and in restaurants in Hawaii, California, New York, Chicago, Los Angeles and San Francisco. One witness, who had seen the merchandise used in New York, Chicago, Los Angeles and San Francisco, testified specifically that he had seen it used "99% of the time against the wall as a picture." All of the testimony left no doubt that the screens in question, as distinguished from the larger, taller and less fragile byobu screens, have never been and are not used as screens or room dividers.

■ At the outset, reference ought to be made to the presumption of correctness that attaches to the classification of the customs officials. It is basic to customs jurisprudence that, in a customs classification case, to overcome this presumption of correctness, the plaintiff must satisfy a dual burden; prove that the assigned classification is erroneous, and that the claimed classification is correct. This presumption, of course, is a specific application of the general presumption of regularity that attaches to all administrative action. In the broad language of the Supreme Court of the United States, "[t]he presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926).

The presumption of correctness of the classification of the customs official is admittedly well established. It rests upon firm judicial authority, and formerly had legislative standing only as to appraisement actions. 28 U.S.C. § 2633 (1965). With the passage of the Customs Courts Act of 1970 the presumption has been codified and is now expressly applicable "[i]n any matter in the Customs Court". Section 116, Pub. L. 91–271, 84 Stat. 274 (1970). It has also recently been reaffirmed and clarified by the Court of Customs and Patent Appeals. In United States v. New York Merchandise Co., Inc., 435 F. 2d 1315, 58 CCPA ——, C.A.D. 1004 (1970), the appellate court indicated that the presumption of correctness "serves the useful purpose of determining the extent of the importer's burden of

proof." The court restated the dual burden of proof that must be sustained by the plaintiff in a customs classification case and noted that:

"It has long been the settled law that the importer's burden does not merely go to producing sufficient evidence to support a conclusion that the original classification was wrong. Regardless of the actual correctness of that classification, the orderly administration of customs law requires that it must stand unless and until the importer submits substantial evidence establishing the propriety of an asserted alternative classification." 435 F.2d at 1318, 58 CCPA at ——.

The court spelled out the practical effect of the presumption, and the dual burden that rests upon the plaintiff as follows:

"In other words, the presumption that the goods have been properly classified has evidentiary weight, in and of itself. The presumption is not rebutted and the burden of coming forward does not shift until the importer has submittted substantial evidence tending to prove not only that the original classification by the Collector of Customs was erroneous, *but also* that some specific classification is proper. Cf. Arditi v. United States, 50 CCPA 49, C.A.D. 818 (1963). At all times, of course, the importer bears the ultimate burden of persuasion. The Customs Court may rule in his behalf only when it is satisfied that he has carried his dual burden of proof with a preponderance of the evidence on both points. See Technical Tape Corp. v. United States, 55 CCPA 38, C.A.D. 931 (1968)." [Emphasis in original.] 435 F.2d at 1318, 58 CCPA at ——.

Particularly relevant to the case at bar is the statement of the court, in the *New York Merchandise Co., Inc.* case, that "[o]ne effect of the presumption of correctness, then, is that the government need not submit any evidence until the importer has come forward with sub-

stantial evidence establishing a *prima facie* case on both aspects of his dual burden of proof." *Ibid.*

It is against this background that the court has examined the record and exhibits in this case. From an evidentiary standpoint, therefore, the question presented may be said to be whether plaintiffs have successfully sustained their dual burden of proof. More specifically, have they established that the items in question are not "wood screens", as classified, but rather "paintings", as claimed.

No testimony was introduced to show that the commercial meaning of the word "screen" was different from the common meaning. Consequently, it is only necessary to ascertain whether the merchandise consists of "screens" within the common meaning of the word. See Moscahlades Bros., Inc. v. United States, 42 CCPA 78, 82, C.A.D. 575 (1954); United States v. E. Dillingham, Inc., 41 CCPA 221, 224, C.A.D. 555 (1954); Ashear Bros., Inc. v. United States, 55 Cust.Ct. 238, 241, C.D. 2582 (1965). Plaintiffs urge that the "merchandise consists of wall hangings or paintings, and are not 'screens' as the common meaning of that term has been judicially determined." (Plaintiffs' brief, p. 9)

A comparatively recent case, closely analogous to the case at bar, and therefore most helpful, is Naumes Forwarding Service v. United States, 55 Cust.Ct. 132, C.D. 2562 (1965). The merchandise in the *Naumes Forwarding Service* case was also imported from Japan and was described on the invoices as 4–panel screens. It was assessed with duty at the rate of 40 per centum ad valorem as screens in chief value of wood under paragraph 411 of the Tariff Act of 1930, as modified. Plaintiff therein claimed that the merchandise was properly dutiable at the rate of 16⅔ per centum ad valorem as "manufactures of wood", under paragraph 412 of the Tariff Act of 1930, as modified.

The description and history of the merchandise found in the *Naumes*

*Forwarding Service* case are pertinent to the case at bar. The court there examined a variety of sources for the common meaning of the word "screen", including the Summary of Tariff Information, 1929, which at page 950 indicated that the blinds, curtains, shades and screens covered by paragraph 411 embrace a wide variety of articles used as a shield from light, heat, wind and to effect privacy. From the case of United Enterprises et al. v. United States, 41 Cust.Ct. 73, C.D. 2023 (1958), appeal dismissed, 46 CCPA 151 (1959), the court quoted the following definition or description of screen found in the 1942 edition of *Funk & Wagnalls New Standard Dictionary:*

> " * * * (1) a thin structure placed before objects to conceal, separate, or shield them; sometimes a frame covered with paper or cloth, and usually movable; * * * (2) Arch. a partition, perclose or other construction, properly light, and permissibly latticed, or of openwork, dividing one part of a building, as choir, chancel, or chapel, from another; as, a choir-screen; an organ-screen." 55 Cust. Ct. at 135.

The plaintiff protested and claimed that the articles were not "screens" since they were not used to conceal, separate, shield objects, or divide a room. It asserted that the merchandise was used "solely as a decorative article hung on walls."

In overruling the protest, and holding that the articles were dutiable as screens in chief value of wood, the court stated:

> "The sample of the merchandise here falls within the dictionary definition of 'screen' in that it is a frame covered with paper or cloth and is movable. It corresponds to the description of oriental folding screens by the authorities cited. The witness herself testified that the imported articles were adapted from designs of old Japanese screens. They were invoiced and entered as screens and the witness and counsel for both parties referred to them as screens." 55 Cust.Ct. at 137.

In the court's opinion the testimony of plaintiff's witness, to the effect that the merchandise was "used solely as a decorative article hung on walls", was "contradicted by the sample itself, which is a 'potent witness.'" Significantly, however, the court added:

> "In its condition as imported, it is adapted for use 'free standing' on the floor, but not for attaching to a wall. For the latter use, its folding feature is of no value. *The means by which such an article is affixed to a wall is not disclosed by the record.*" [Emphasis added.] *Ibid.*

The plaintiffs, in the case at bar, admit readily that the merchandise in the present case is "very similar" to the merchandise in the *Naumes Forwarding Service* case, which sustained its classification as screens, but quote the following from that case:

> "While use may be of paramount importance in determining the identity of an article (United States v. Quon Quon Company, 46 CCPA 70, 73, C.A.D. 699), we do not think the weak use testimony here is sufficient to establish that these articles are not used as screens, when other factors, such as their shape, construction, and resemblance to the well-known oriental folding screen, proclaim that they are." *Ibid.*

In the case at bar, the crux of plaintiffs' contention is found in their statement that "no such deficiency of showing what the merchandise was designed and made for and the use to which they [the wall hangings] were actually put exists in the present record."

Plaintiffs rely upon the unanimous and uncontradicted testimony of their witnesses that the present merchandise is not used as screens but as "wall hangings" in the same manner as paintings. Additionally, they have introduced into evidence, in the words of the *Naumes Forwarding Service* case, "[t]he means by which such an article is affixed to a

wall", i. e., the hardware or "hanging devices".

As gleaned from the following quotation from the *Naumes Forwarding Service* case, the distinction that plaintiffs make between that case and the case at bar is well founded:

"If there should be strong and convincing testimony that articles such as this merchandise at bar were chiefly used to hang on walls for decoration, it would be a serious question whether this would override the fact that the merchandise was bought and sold as screens and was commonly known as screens. The word 'screen' might be held a use classification as applied to some articles, but not as to those referred to as screens in common speech. We need not decide such issues here." 55 Cust.Ct. at 138.

The case of United States v. Quon Quon Company, 46 CCPA 70, C.A.D. 699 (1959), cited in the *Naumes Forwarding Service* case, sheds considerable light upon the question presented and the proper and just determination of the case at bar. The *Quon Quon Company* case was cited for the proposition that use is of paramount importance in determining the identity of an article. The citation contains a specific reference to page 73 of the opinion in the *Quon Quon Company* case where Judge Rich, writing for the Court of Customs and Patent Appeals, stated:

"The government would have us shut our eyes to the evidence as to what the imported articles are used for, apparently only for the reason that the term 'baskets' in paragraph 411 provides for baskets *by name*. We have been unable to find in the Government's brief citation of any authority requiring us to do this. While unhesitatingly granting the truth of the contention that 'baskets' in the tariff act provides for baskets '*eo nomine*,' this does not help us in the least to decide whether the imported articles *are* baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act." [Emphasis in original.] 46 CCPA at 73.

In the *Quon Quon Company* case the government appealed from a decision of this court which held that certain rattan woven articles were dutiable as parts of furniture, rather than as baskets, as they had been classified by the collector of customs. It was clear that the articles looked like "shallow, flat baskets". It was equally clear that they were "sold and used only as tops of coffee and cocktail tables", and that they were "not likely to be used as baskets". The record also revealed that "upon assembly with iron bases of domestic manufacture the combination is furniture." In its opinion the Court of Customs and Patent Appeals not only observed that "the use of the merchandise cannot be ignored in determining whether it is properly classifiable as baskets", but also stated that "[o]f all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance." *Id.* at 74, 73. In view of the testimony, as to the use of the articles as table tops, the court held that the plaintiff had sustained its burden of proving that they were not baskets. The court consequently sustained the decision of the Customs Court that the articles were dutiable as parts of furniture.

The rationale of the *Quon Quon Company* case has special applicability to the case at bar. Not only does it indicate

that testimony as to the use of an article cannot be ignored, but it adds that such testimony is most likely to help determine the identity of the article and that "use is of paramount importance". The articles in the *Quon Quon Company* case were not properly classifiable as baskets simply because they looked like baskets and the tariff laws contained a provision that covered baskets. The case stands for the proposition that the use of an article, rather than its appearance, may very well determine its identity.

Although appearance, without more, may be the basis for the initial classification of an article by the customs officials, such a classification will not prevail when contradicted by testimony as to use which shows a different identity for the article. Hence, in the case at bar, although "screens" might initially be a reasonable way to describe or refer to the articles in question, that designation commences to vanish as credible testimony is introduced showing a use that makes a different classification more appropriate. The citation of the *Quon Quon Company* case, in the *Naumes Forwarding Service* case is, therefore, particularly significant since the court thereby reaffirmed that the use to which an article is put "may be of paramount importance in determining the identity" of the article.

Judge Nichols, writing for the court in the *Naumes Forwarding Service* case, treated with thoroughness the common meaning of the term "screens". That decision consequently established a guide or standard by which it may be determined whether a particular article is or is not a screen.

Plaintiffs, in the case at bar, do not quarrel with the definitions of the word "screen", as set forth in the *Naumes Forwarding Service* case. As stated in their brief, those definitions "hold that screens are (1) articles of furniture, (2) used to conceal or protect from observation, draught, or the heat of fire, or to partition." Plaintiffs assert that no such use is made of the wall hangings at bar and that "their use is that of any painting, to adorn a wall." They state that there is "not even a suggestion in the record of any other use", and citing the case of Klipstein v. United States, 1 Ct.Cust.App. 122, 124, T.D. 31120 (1910), add that if any other use "could have been made of these wall hangings", the seven witnesses who testified at the trial, "with their broad background should have been aware of it." (Plaintiffs' brief, p. 11)

The defendant minimizes the evidence introduced by the plaintiffs to establish chief use, and asserts that:

"Failure on the part of plaintiffs to show a chief use other than as a screen as classified is fatal to their claim. This is especially true since the merchandise is known and sold by the name 'Byobu' which means, as the witness stated, folding screen. Since it is sold as and is called a folding screen and was classified as such, a presumption attaches to said classification that it is used as a screen.

"Also the merchandise herein corresponds to the dictionary definition of 'screen' in that its frame is covered with paper and is movable. The articles were invoiced as screens and entered as such. The testimony herein is insufficient to establish that these articles are not screens when other factors, such as their shape, construction and resemblance to the well-known oriental folding screen, proclaim that they are." (Defendant's brief, pages 16–17)

There is no doubt that the items in question evolved from the early and larger Japanese and Korean screens. The original oriental screens are ably described in the case of Vantine & Co. v. United States, 3 Ct.Cust.App. 488, T.D. 33124 (1913). In the *Vantine & Co.* case the importers claimed that the "screens covered by the protests" were dutiable as screens of wood under paragraph 214 of the Tariff Act of 1909. The merchandise was clearly screens of embroidered silk panels with wooden frameworks. Since silk was concededly the component material of chief value, the court sus-

tained the classification, and held that the screens were not "screens of wood", but rather articles in chief value of silk.

The holding and reasoning of the *Vantine & Co.* case tend to support the contention of the plaintiffs in the case at bar. Nothing could be clearer in the *Vantine & Co.* case than that the merchandise consisted of *screens* with framework of wood. Yet they were not held dutiable under the *eo nomine* provision for screens of wood, for as stated by the court:

> "These screens are, as stated, composed in chief value of embroidered silk. The framework, which is of wood, is not a screen and can not be used as such. The panels are necessary to make it usable or serviceable as a screen. The embroidery thereon apparently constitutes an important element in the attractiveness and beauty of the screen itself, and the purpose served by the wooden frames is to hold these panels in place and facilitate the use thereof." 3 Ct.Cust.App. at 489.

Just as in the *Vantine & Co.* case the embroidery constituted the important element for the attractiveness and beauty of the screens, it is obvious in the case at bar, that the equally important element is the painting. Quite apart from the clarity of the testimony, a visual examination will show beyond doubt that it is the contribution of the artist, who has created the painting, that gives the screen its attractiveness and beauty that make it desirable and suitable as a "wall hanging".

The *Vantine & Co.* case demonstrates that to say that the article is a "screen" does not foreclose further inquiry as to its proper classification for customs purposes. Likewise, in the case at bar, to declare that the merchandise consists of "screens", and that "byobu" means a "folding screen" in Japanese, in no way preclude the court from giving due weight to the testimony as to use. No one denies that the items may be referred to as "byobu screens" or that "byobu" means folding screen. Kenkyusha's New Japanese-English Dictionary (1942),

Takahashi, Romanized English-Japanese and Japanese-English Dictionary (1952). Their use, and the probative value of the exhibits themselves, however, may indeed determine the true identity of the articles for customs classification purposes.

Quotations from cases where the witnesses who testified as to chief use did not possess the familiarity with the merchandise as those in the case at bar are inapplicable. Under no circumstances, for example, can it be said of the witnesses who testified for plaintiffs in the case at bar that their "observation of the use" of the merchandise was "extremely limited in scope", as was stated by Judge Ford in Novelty Import Co., Inc. v. United States, 53 Cust.Ct. 274, 276, Abs. 68780 (1964). Here, the testimony of record will leave no doubt that the screens were used to hang on walls as pictures or paintings.

A careful examination of the exhibits themselves has led to certain conclusions found to be helpful in determining the true nature or identity of the "wall hangings". First, it would not be inappropriate to say that the screen constitutes merely the surface upon which the artist paints a landscape or other picture. It is, therefore, accurate to say that the screen, when completed with the painting and used as a wall hanging, fulfils the dictionary definition of a painting as a "decoration achieved by applying paint to a surface." Webster's Third New International Dictionary, Unabridged (1968).

Second, the fact that the surface upon which the artist executes the painting is a screen, and not a canvas or a more usual surface, should not prevent the finished artistic creation from being embraced in the dictionary definition of a "painting" as a "decoration achieved by applying paint to a surface." *Ibid.*

This view of the merchandise before the court finds judicial support in those cases that have dealt with paintings on porcelain. For example, in Gustav Oberlaender v. United States, 70 Treas.Dec. 192, T.D. 48475 (1936), this court held that certain paintings on porcelain

plates were nonutilitarian original works of free fine art, in the form of paintings, and were therefore entitled to free entry under paragraph 1807 of the Tariff Act of 1930. The reversal of this holding by the Court of Customs and Patent Appeals was based solely on the question whether the importer had sustained his burden of proof that the paintings were original. United States v. Gustav Oberlaender, 25 CCPA 24, T.D. 49037 (1937). The appellate court reversed simply because it believed that the importer's claim of originality was based on testimony that was merely conjecture and opinion. 25 CCPA at 30.

The Court of Customs Appeals, as early as 1917, has held that earthenware vases and plaques painted in mineral colors and "fired", the original work of an artist and having no utilitarian purpose, were entitled to free entry as "paintings in mineral colors" under the Tariff Act of 1913. Wells, Fargo & Co. v. United States, 8 Ct.Cust.App. 125, T.D. 37266 (1917). More recently, certain ornamental non-utilitarian vases, containing original paintings in mineral by professional artists, were classified for tariff purposes as "original paintings in mineral". They were consequently admitted duty free under paragraph 1704 of the Tariff Act of 1922. United States v. Royal Copenhagen Porcelain, Inc., 17 CCPA 464, T.D. 43929 (1930).

Third, the fact that the painting is not painted in oils is likewise an irrelevance. The screen admittedly contains a Japanese or oriental painting, and it is well known that the regular or traditional medium of Japanese art is water colors and not oil. See United States v. Toledo Museum of Art, 25 CCPA 373, 377, T.D. 49455 (1938).

Fourth, it would also appear to be clear that the pictures or paintings that have been painted on the surface of the merchandise are representative of Japanese free fine art. See United States v. Toledo Museum of Art, 25 CCPA at 377.

Reference may also be made to the recent case of M. H. Garvey Co. v. United States, 65 Cust.Ct. ——, C.D. 4051 (1970), where the merchandise was invoiced as either "paper painted scrolls" or "paper painted screens". The plaintiff therein claimed that it was dutiable as original paintings under the appropriate items of the tariff schedules. On the evidence presented, Judge Wilson referred to the merchandise as works of art, original paintings created by artists, and held that "the imported screens and scrolls are properly classifiable under TSUS item 765.05 [predecessor provision of 765.03 as to original paintings] or item 765.03 and are therefore importable 'free of duty.'" 65 Cust.Ct. at ——.

An examination of the artistic merit of the paintings, in the case at bar, together with the testimony of the witnesses, will leave no doubt that the painting is the important element which contributes to the merchandise its beauty and aesthetic value. This examination, from an artistic standpoint, reveals that the painting is not merely well composed but is an artistic creation blending many colors portraying the sky, fields, mountains, brooks and native dwellings, in black and white and in rich hues of blue, green, gold and gray.

Plaintiffs emphasize that although the merchandise evolved from the early Japanese and Korean screens dealt with in the *Vantine & Co.* case, the wall hangings in the present case are smaller and are not the larger size screens that are furniture and serve the function of screens. Plaintiffs submit that the present merchandise was designed to satisfy the demand in the United States for wall hangings. They conclude that "[t]his cutting down to size was done for the specific purpose of creating a wallhanging for use in the United States as such and not for the purpose of making a screen." (Plaintiffs' brief pages 11–12)

The conclusion asserted by plaintiffs is fully justified. It is amply supported not only by the totality of the testimony, but also by the exhibits introduced into evidence. In view of the foregoing, the court must hold that the merchandise at bar is indeed properly described as "wall hangings", and that it is not used as

screens. It is not a utilitarian article of furniture, but an object of admiration and contemplation. To say that it is a screen would be to assert that it is furniture, used in any of the ways in which screens are usually used. All of the testimony unequivocally indicates the contrary since all of the uses to which screens are put are thoroughly negated by the record.

Were there to be a lingering doubt whether the articles are "screens", within the meaning of item 206.67 of the tariff schedules, that doubt would be dispelled by the application of the doctrine of *noscitur a sociis*. See authorities cited in Nomura (America) Corp. v. United States, 299 F.Supp. 535, 62 Cust.Ct. 524, 530, C.D. 3820 (1969), aff'd, 435 F.2d 1319, 58 CCPA ——, C.A.D. 1007 (1971). The word "screens" in item 206.67 is associated with "blinds", "curtains", and "shades", all being articles used to shield from light, heat, wind, and to effect privacy. See 1929 *Summary of Tariff Information* referred to previously herein. From the standpoint of use, determined by applicable judicial authority to be of "paramount importance", the articles are not screens but wall hangings displayed on walls in the same manner as paintings. Their examination, and the testimony of record, compel a determination that for customs classification purposes, they are original paintings within item 765.03 of the Tariff Schedules of the United States.

Asserting deficiencies in plaintiffs' proof as to chief use, defendant states that "[p]laintiffs have failed to prove that the merchandise in issue is chiefly used as a wall decoration (or painting) on an adequate geographical or quantitative basis." Hence, it asserts that "plaintiffs have not proven a *prima facie* case" in accordance with the applicable principles of law. L. Tobert Co., Inc., American Shipping Co. v. United States, 41 CCPA 161, C.A.D. 544 (1953); United States v. Gardel Industries, 33 CCPA 118, C.A.D. 325 (1946).

Whether one speaks of adequate, sufficient, competent, direct or clear and convincing evidence, plaintiffs have fully discharged their obligation of persuading the trier of the facts as to the use of the merchandise. A reading of the record, as well as an examination of the wall hangings together with the hardware or hanging devices and the other exhibits, will satisfy even the most demanding standard. See United States v. F. W. Woolworth Co., 23 CCPA 98, T.D. 47765 (1935). There can be no doubt, in the language of the recent *New York Merchandise Co., Inc.* case, that plaintiffs herein have borne "the ultimate burden of persuasion." 435 F.2d at 1318, 58 CCPA at ——.

Defendant also contends that plaintiffs' claim for classification of the merchandise under item 765.03 of the tariff schedules "is further defective" because the testimony shows that "the merchandise is not a painting but a painted manufactured article (screen) expressly excluded by Schedule 7, Part 11, Subpart A, Headnote 1." (Defendant's brief, p. 17) Defendant asserts that "before the artist touches his brush to this article it is in a completed form as a screen" and adds:

> "It is not manufactured as a painting but rather as a screen and it is only later, after the manufactured article is complete as a screen, that it is decorated or it is painted upon." (Defendant's brief, p. 18)

To say that the merchandise is excluded from classification as a painting because of the cited headnote is to fail to comprehend and appreciate the nature of plaintiffs' proof. Were the true identity of the merchandise to be "screens", there would be no doubt as to the applicability of the cited headnote. Plaintiffs, however, have successfully established that the merchandise does not consist of screens in the sense defined in dictionaries and adopted by the courts. Suffice it to say that not being screens, but a form of pictorial art, the headnote is not pertinent.

Finally, defendant concludes that plaintiffs have failed to overcome the presumption of correctness which attaches

to the district director's finding of classification under item 206.67 of the Tariff Schedules of the United States. The court does not agree.

The most recent expression by the Court of Customs and Patent Appeals indicates that this court may not rule in favor of plaintiffs unless it is satisfied that they have "carried [their] dual burden of proof with a preponderance of the evidence." United States v. New York Merchandise Co., Inc., 435 F.2d 1315, 58 CCPA ——, C.A.D. 1004. The appellate court has reaffirmed the importance of the presumption and emphasized the dual nature of the burden. However, as may be noted by its citation of Technical Tape Corp. v. United States, 55 CCPA 38, C.A.D. 931 (1968), it has not augmented the standard or quantum of proof required to overcome the presumption. The standard remains "a preponderance of the evidence on both points", and the following statement found in the *Technical Tape Corp.* case is still accurate and authoritative:

> "The burden required of an importer seeking to overcome the presumption of correctness of the decision of the collector is to prove by a preponderance of the evidence that the collector's classification is incorrect, and that his sought classification is correct. He is not required to prove his case to a moral certainty or beyond a reasonable doubt." 55 CCPA at 42.

Nevertheless, as indicated previously, the state of the record in the case at bar is such as to satisfy an even more demanding standard than is required. The presumption of correctness has been overcome since plaintiffs have discharged "the burden of persuading the trier of the fact of the nonexistence of the presumed fact." Morgan and Maguire, Looking Backward and Forward at Evidence, 50 Harvard L.Rev. 909, 913 (1937). On the evidentiary effect of presumptions and burden of proof, see also Morgan, Instructing the Jury upon Presumptions and Burden of Proof, 47 Harvard L.Rev. 59, 83 (1933). Adopting the words of Mr. Justice Cardozo, "[t]he presumption does not consecrate as truth the extravagantly improbable." Matter of Findlay, 253 N.Y. 1, 8, 170 N.E. 471, 473 (1930) (presumption of legitimacy rebutted).

It is the determination of the court that the plaintiffs have borne their dual burden of proof in showing that the merchandise has been erroneously classified as screens, and that it is properly classifiable as "paintings" under item 765.03 of the Tariff Schedules of the United States. It is consequently entitled to enter duty free.

In view of the foregoing, the classification of the district director is set aside and the protest is sustained. Judgment will issue accordingly.