(C.D. 4393)

Nᴵɢʜᴛᴡʀɪᴛᴇʀ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ *v.* Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ

United States Customs Court, First Division

(Decided November 24, 1972)

*Jennings Bailey, Jr.,* for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Herbert P. Larsen* and *Steven P. Florsheim,* trial attorneys), for the defendant.

RE, Judge: The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan and invoiced as "telescopic penpointers". Plaintiff, in its proposed findings of fact, describes the imported "penpointer" as:

> "a collapsible or telescoping pointer capable of being carried in the pocket in the same manner as a ball point pen. The various sections slide one out of the other and the article can be extended to approximately two feet and used as a pointer. It is provided with a cap which can be removed to expose the tip of a ball point pen, whereupon, the article can be used for writing."

The merchandise was classified by the customs officials as "ball-point pens" under item 760.05 of the Tariff Schedules of the United States, and was consequently assessed at the rate of four (4) cents each plus 27 per centum ad valorem.

Plaintiff claims that the merchandise has been erroneously and illegally classified, and should have been properly classified under one of the following three alternative tariff provisions:

(1) as articles of copper, not coated or plated with precious metal, under item 657.35 of the tariff schedules, at a rate of 1.275¢ per pound plus 15% valorem;

(2) as articles of base metals, not coated or plated with precious metal, under item 658.00 of the tariff schedules, at a rate of 18% ad valorem; or

(3) as "hand styluses" under item 710.78 of the tariff schedules, at a rate of 11.25% ad valorem.

The following are the pertinent provisions of the Tariff Schedules of the United States:

Classified under:

Schedule 7, part 10:

> "Part 10 headnotes:
>
> 1. The provisions of this part cover pens and pencils designed for writing, marking, and similar uses, * * *.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

| | | |
|---|---|---|
| 760.05 | Fountain pens, including stylographic pens and ball-point pens and ball-point pencils, and combination pens and pencils _____ | 4¢ each + 27% ad val." |

Claimed under:

Schedule 6, part 3, subpart G:

"Articles of copper, not coated or plated with precious metal:

| | |
|---|---|
| * * * * * | * * |
| 657.35 Other | 1.275¢ per lb. + 15% ad val. |
| * * * * * | * * |

658.00 Articles of base metals not provided for in the foregoing provisions of this subpart, not coated or plated with precious metal _____ 18% ad val."

Schedule 7, part 2, subpart C:

"Drafting machines, compasses, dividers, ruling pens, lettering pens (including fountain-pen type) used by draftsmen, pantographs, drawing curves, rulers, scribers, straight edges, disc calculators, slide rules, and other instruments, all the foregoing which are drawing, marking-out or mathematical calculating instruments; hand styluses; micrometers, calipers, gauges, balancing machines, and non-optical measuring or checking instruments, apparatus, and machines not specially provided for; and parts of the foregoing articles:

Disc calculators, slide rules, and other mathematical calculating instruments, all the foregoing and parts thereof:

| | | |
|---|---|---|
| 710.60 | Not of metal | * * * |
| 710.61 | Of metal | * * * |
| 710.63 | Protractors, and parts thereof | * * * |
| 710.65 | Calipers and micrometers, and parts thereof | * * * |
| | Folding rules, and parts thereof: | |
| 710.67 | Of aluminum | * * * |
| 710.68 | Of wood | * * * |
| 710.70 | Other | * * * |
| 710.72 | Rules (except folding rules) | * * * |
| 710.76 | Lettering pens (including fountain-pen type) used by draftsmen, and parts thereof | * * * |
| 710.78 | Hand styluses | 11.25% ad val. |
| 710.80 | Other | * * *"

Plaintiff notes that there can be no dispute as to the nature of the merchandise. The imported article, represented by plaintiff's exhibit 1, is "the same thing" as defendant's exhibit "A". Admittedly, plaintiff advertises and sells its product as a "penpointer", whereas defendant's exhibit is described, on the case or package that contains it, as a "Pointer Pen". It cannot be questioned that both these exhibits are usable for writing and pointing.

The testimony revealed that, in its imported condition, the telescopic penpointer includes two pointer tips and two ink nibs, i.e., refill cartridges. Testimony was also presented that, because of the poor quality of the ink nibs, plaintiff's telescopic penpointer is seldom, if ever, used for writing. Plaintiff has, at times, replaced defective nibs in the imported merchandise. Refill cartridges may also be purchased. There was also testimony that most purchasers check to see if the penpointer can write.

Although there was testimony that the penpointer is a "gimmick" or "novelty" item, it was not questioned that it is distributed by a distributor-manufacturer of ball-point pens, and is sold in retail stores that sell pens.

The defendant submits that the testimony of the expert witnesses who testified at the trial leaves no doubt that the penpointers are, in fact, ball-point pens. Indeed, the defendant notes that it would seem to be conceded that the penpointers can be used for writing, and are used for writing precisely in the same manner as all other ball-point pens.

Additionally, the defendant indicates that the merchandise is clearly embraced by the definition of ball-point pens as contained in the federal excise tax regulations. This definition, which is the generally accepted definition of a ball-point pen during the relevant period, reads as follows:

> "The term 'ball point pens' includes any writing instrument of the type having a reservoir, cartridge, or magazine containing a writing compound or fluid that is fed to a ball type writing device when the instrument is in use." *Federal Register*, March 1, 1960, p. 1777; 26 C.F.R. 48.4201–2(d) (1971).

Plaintiff's claim for the reclassification of the merchandise is premised on the assertion that "the primary function and purpose of the article * * * is as a pointer, and that its utility for writing purposes is at most incidental." The defendant, however, responds that even if plaintiff's assertion were a fact supported by evidence, it would not necessarily prevent the penpointer from being classified under an *eo nomine* provision which expressly covers "ball-point pens". Defendant adds that it cannot be refuted that the merchandise

possesses all of the characteristics and features of a ball-point pen, and that it can, and does in fact, perform as a ball-point pen. *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966) ; *Romicks International, Inc.* v. *United States*, 64 Cust. Ct. 316, C.D. 3997 (1970).

In the case at bar it is necessary to restate the fundamental principle of customs law that, in a tariff classification case, the plaintiff has a dual burden of proof. In order to refute the presumptively correct classification, plaintiff must not only establish that the classification is erroneous, but must also establish that the claimed classification is correct. *United States* v. *Enrique C. Lineiro*, 37 CCPA 5, C.A.D. 410 (1949). See also discussion of presumption of correctness in *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, 58, C.A.D. 1004, 435 F.2d 1315 (1970), and *Sanji Kobata et al.* v. *United States*, 66 Cust. Ct. 341, 344, C.D. 4213, 326 F. Supp. 1397, 1399 (1971). Hence, in a particular case, the court need not decide whether the classification is erroneous unless plaintiff has affirmatively established that one of the claimed classifications is correct. See *Plastic Service Co.* v. *United States*, 63 Cust. Ct. 528, 529, C.D. 3947 (1969) ; *Gamble & Vargish & Co.* v. *United States*, 64 Cust. Ct. 568, 570, C.D. 4037 (1970).

The present record leaves no doubt that plaintiff has failed to establish the necessary elements for the classification of the merchandise under either item 657.35 or item 658.00 of the Tariff Schedules of the United States. Item 657.35 requires that the merchandise be an article of copper, not coated or plated with precious metal. Item 658.00 requires that the merchandise be of base metals, not coated or plated with precious metals, and not specially provided for in any other provision of schedule 6, part 3, subpart G. No proof has been submitted on any of the requirements set forth in either provision of the claimed tariff schedules. Plaintiff's total lack of proof on the essential requirements for classification under either of these two claimed items is not cured by the assertion in its brief that:

> "It is perfectly obvious that the main part of the cost of the article is in the telescoping shell and not in the ball point refill which is a very simple and inexpensive object. Furthermore, the primary use of the device is as a pointer, and not for writing."

Surely, the factual assertion in the brief, not founded upon any evidence of record, has no evidentiary value. See authorities cited in *Tropi-Cal* v. *United States*, 63 Cust. Ct. 518, 521, C.D. 3945 (1969). Furthermore, the factual aspects of the question are not so "perfectly obvious" as to dispense with proof. An examination of plaintiff's exhibit will show that it consists of metal, plastic and ink. The record, however, does not reveal which of these materials constitutes the com-

ponent material of chief value. Indeed, this court has stated that even "[a] mere declaration or conclusion of a witness of an essential ultimate fact in issue, without any corroborating evidence, is not sufficient to overcome the presumption of correctness in favor of the collector's classification." *Gamble & Vargish & Co.* v. *United States*, 64 Cust. Ct. at 572. See also *Plastic Service Co.* v. *United States*, 63 Cust. Ct. 528.

Since there is lacking all essential proof on the claims for classification under item 657.35 or 658.00 of the tariff schedules, plaintiff has failed to establish a *prima facie* case, and those claims are consequently overruled.

The remaining question is whether plaintiff has established that the merchandise was properly classifiable as hand styluses. Plaintiff urges that, while the penpointer is more than an ordinary pointer, it "is still a pointer". Since there is no tariff provision which covers "pointers", plaintiff claims that the penpointer "should be classified as a hand stylus under Tariff Schedule 710.78." For this claim plaintiff would seem to rely upon a broad definition of stylus, and quotes *Webster's Third New International Dictionary* (1968) which defines stylus as:

> "2: INDICATOR, POINTER: *esp:* the gnomon of a sundial 3: an instrument for writing or marking: as a (1): STYLE 1 (2): an ancient writing instrument for use on papyrus or parchment b (1): a hard-pointed piece (as of glass or other material) used for tracing or writing on carbon paper so as to make impressions on the paper beneath the carbon (2): a hard-pointed pen-shaped instrument for drawing, tracing, lettering, shading, ruling, or handwriting on stencils used in a reproducing or duplicating machine . . . a cutting tool used to produce an original record groove during disc recording—called also *cutting stylus* d: a hard-pointed instrument for punching the dots in writing braille with a braille slate e: a device that traces a recording (as of a kymograph or an electrocardiograph) on paper" (Emphasis in original.)

The definition describes a variety of objects including "an instrument for writing or marking". Surely, it cannot be contended that Congress intended all "instruments for writing or marking" to fall within the common meaning of "hand stylus". Nor can it be contended that Congress intended all of the other objects enumerated in that definition to be classified as "hand styluses" under item 710.78 of the tariff schedules.

Any doubt as to the meaning of "hand styluses", as set forth in item 710.78 of the tariff schedules, may be resolved by a reading of the superior heading to that item, and the application of the doctrine of *noscitur a sociis*. That doctrine teaches that the meaning of the words "hand styluses", as intended by Congress in that enumeration, may be gleaned by the meaning of the other words with which they are asso-

ciated. See *Nomura (America) Corp.* v. *United States*, 62 Cust. Ct. 524, C.D. 3820, 299 F. Supp. 535 (1969), *affirmed*, 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971). The superior heading indicates clearly that the articles therein contained are devices used by draftsmen, mathematical and calculating instruments, and non-optical measuring or checking instruments. The telescopic penpointers are unlike any of the enumerated articles, and are not the kind of hand styluses which are provided for in item 710.78 of the tariff schedules.

On the record before the court it is clear that the plaintiff has failed to establish the correctness of any of its claimed classifications. Consequently, the court need not decide the correctness of the classification under item 760.05 of the tariff schedules.

In view of the foregoing, the claims for classification under items 710.78, 657.35 or 658.00 of the tariff schedules are overruled.

Judgment will issue accordingly.