**BORDER BROKERAGE COMPANY, Inc.**

v.

**UNITED STATES.**

C.D. 4052; Protest 67/13060–25224.

United States Customs Court,
Third Division.

July 23, 1970.

Glad & Tuttle, Los Angeles, Cal. (George R. Tuttle, Jr. and Robert Glenn White, Los Angeles, Cal., of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Steven R. Sosnov and Velta A. Melnbrencis, New York City, trial attorneys), for defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges.

RICHARDSON, Judge:

The merchandise of this protest consists of tomatoes exported from Canada and entered at the port of Blaine, Washington. The merchandise covered by entry 05–6525 consists of 200 cartons of 6 x 6 No. 2 tomatoes packed in 18-pound cartons, entered February 3, 1964, and classified in liquidation as entered under item 137.63 of the Tariff Schedules of the United States at the duty rate of 1½

cents per pound. The merchandise covered by entry 05–11088 consists of 100 cartons of 6 x 7 No. 2 tomatoes packed in 18-pound cartons, entered June 16, 1964, and classified in liquidation as entered under item 137.60 of the tariff schedules at the duty rate of 2.1 cents per pound.

No claim is made in the protest regarding classification of the tomatoes. Plaintiff claims that the tomatoes are entitled to entry free of duty pursuant to item 800.00 of the tariff schedules as returned American products not advanced in value or improved in condition while abroad. And by way of amendment of the protest plaintiff also claims, alternatively, that liquidation of the entries is null and void because the tomatoes are dutiable only on the increased value resulting from "alterations" abroad pursuant to item 806.20 of the tariff schedules, requiring a remand of the matter to a single judge to determine the value of such "alterations." An additional claim in the protest for duty free entry of the tomatoes as "assembled" articles pursuant to item 807.-00 of the tariff schedules was not pressed by plaintiff, and is, therefore, deemed abandoned.

At the trial, Joe Sung, called as a witness on plaintiff's behalf, testified that he is part owner together with his brother of Pacific Produce Company, Limited, of Vancouver, British Columbia, Canada, a wholesale fruit and vegetable business and exporter and shipper of the tomatoes covered by the entries before the court. Mr. Sung testified that he is the buyer for Pacific Produce and is in charge of purchasing tomatoes in the United States, that he supervises the operation of the company's warehouse and its personnel and the packing of tomatoes in Canada, and that, together with his brother, he directs the sale of tomatoes to customers in the United States.

According to the testimony of Mr. Sung and documentation in evidence in the form of invoices it appears that the tomatoes covered by the entries at bar

were grown in Florida. The tomatoes covered by entry 05–6525 were purchased by Sung for Pacific Produce, along with others, from Southmost Vegetable Coop Association, growers and shippers of Homestead, Florida, on or about January 1, 1964, at $2.75 per 40-pound carton, and 101 of such cartons of tomatoes were shipped by rail to Pacific Produce in Canada where they were unloaded, unpacked, sorted, graded by color and size, and repacked to constitute the shipment covered by this entry pursuant to the sale of such tomatoes by Sung to Safeway Stores of Bellevue, Washington, on or about January 31, 1964, at the delivered, duty paid price of $2.52 per 18-pound carton. And the tomatoes covered by entry 05–11088 were purchased by Sung for Pacific Produce, along with others, from Taylor & Fulton, Inc., growers and shippers of Palmetto, Florida, on or about May 29, 1964, at $2.50 * per 40-pound carton, and 453 of such cartons of tomatoes were shipped by rail to Pacific Produce in Canada where they likewise were unloaded, unpacked, sorted, graded by color and size and a portion of them repacked to constitute the shipment covered by this entry which represents a sale by Sung to Publis Produce of Seattle, Washington, made on or about June 9, 1964, at the delivered, duty paid price of $3.75 per 18-pound carton.

It further appears that the tomatoes exported from the States to Canada were purchased for sale in Canada, and those that were not sold to customers in the United States were sold by Pacific Produce in Canada through its own retail divisions or to the independents. With respect to the tomatoes at bar, there was no intermixing of sizes in the repacking, that is, the 6 x 6's were repacked in smaller cartons made just for that size and the same thing for the 6 x 7's. Also, the resale prices charged by Pacific Produce included such items as labor costs for repacking and regrading, cost of containers and liners, freight, icing, brokerage and customs clearing charges, and exchange costs. And the cost of repacking the tomatoes in the smaller 18-pound cartons was said to be $1.10 per carton, a figure worked out by Pacific Produce's cost accountant. And in the culling out of spoiled or broken down tomatoes the witness indicated that the tomato loss averaged about 4 percent.

On cross-examination Mr. Sung testified that plaintiff, a customs broker, was the agent of Pacific Produce, and that plaintiff filed the instant protest on behalf of Pacific Produce. Whereupon, counsel for the Government moved for a dismissal of the protest contending that it had been filed by an improper party. Decision on the motion was reserved by the trial judge for disposition by the division.

Plaintiff's attorney indicated at the trial that he would address himself to the issue presented by the motion to dismiss in his brief, but did not do so.

Albert G. Grasher, also called as a witness on plaintiff's behalf, testified that he is a licensed customs broker and is president of plaintiff-broker corporation, that plaintiff made the customs entries herein involved in its own name, paid the duties and billed the shipper Pacific Produce for same, and that the customs attorney was hired by the shipper Pacific Produce.

■ In support of the motion to dismiss the protest defendant argues that plaintiff is not a proper party contending that plaintiff was the agent of the foreign shipper who was neither the importer, consignee, nor the agent of the person paying such charge or exaction within the meaning of 19 U.S.C.A., section 1514 (section 514, Tariff Act of 1930, as amended). Section 1514 reads in relevant part as follows:

"* * * all decisions of the collector * * * shall * * * be final and conclusive upon all persons * * * unless the importer, consignee, or agent of the person paying such charge or exaction * * * shall

* A price adjustment for late delivery reduced the price to $2.00 per carton.

* * * file a protest in writing with the collector * * *.

As we view the matter the test of one's right to file and prosecute a protest under section 1514 is the status of the protestant as importer, consignee, or agent of the person paying such charge or exaction.

[2] Defendant also argues that if plaintiff is a proper party the instant protest was not prosecuted by the plaintiff, owing to the fact that plaintiff's attorney was hired by the foreign shipper Pacific Produce. The record shows that the customs law firm of Glad & Tuttle has appeared in this proceeding as attorney for plaintiff at every stage from the filing of the protest down through the trial and submission of briefs. This, we think, is full compliance with Rule 9 of the rules of this court concerning the appearance of counsel for parties engaged in litigation in this court. Rule 9 does not address itself to the matter of compensation of attorneys appearing for parties in this court.

■ The declaration of the foreign shipper shows the merchandise was "consigned" by the shipper, Pacific Produce, Ltd. of Vancouver, B.C., to Border Brokerage Co., Inc. customhouse broker, at Blaine, Washington.

The entry papers show Border Brokerage Company, Inc., customhouse broker as "nominal consignee" acting on behalf of the American purchasers, Safeway Stores and Publis Produce as principals or ultimate consignees.

The protest is signed by A. G. Grasher, president of Border Brokerage, and indicates Glad and Tuttle as attorneys. At the trial in which Grasher appeared as a witness, after defendant made its motion to dismiss, he was not asked if his company was an "agent" of the foreign shipper or whether he functioned in a sense different from a "nominal consignee."

Since the declaration of the foreign shipper describes the customhouse broker as a "consignee"; the official papers describe the customhouse broker as a "nominal consignee"; and the president of the customhouse broker was not asked any question about his company's status by the attorney who made the motion to dismiss on the basis of an answer given by another witness on cross-examination that the customhouse broker was the "agent" of the foreign shipper, the court feels the motion to dismiss should be denied. United States v. Vandiver, 133 F. 252 (U.S.Dist.Ct., Eastern Dist. of Pa.), 9 Treas.Dec. 191, T.D. 26036 (1904).

We turn next to plaintiff's claim for duty free entry of the tomatoes as returned American products. The provisions of item 800.00 of the tariff schedules permit free entry for imported articles which are:

> Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad.

Plaintiff argues that the treatment accorded the tomatoes abroad was not such as to effect an increment in their value or improvement in their condition. And defendant argues that while it is true that tomatoes were exported and tomatoes were returned to the United States, the treatment accorded the tomatoes abroad resulted in an improvement in their condition that greatly increased their value. Thus, the issue before the court here is essentially one of fact.

■ In Hallauer v. United States, 40 CCPA 197, C.A.D. 518 (1953), involving the reappraisement of apples *vis-a-vis* paragraph 1615(g) of the Tariff Act of 1930, as amended, transported to Canada in 35-pound boxes and returned to the United States in 42-pound boxes, our appeals court regarded the wiping (to remove an insecticide spray residue), polishing, grading, wrapping, and packing of apples in Canada to constitute changes which were sufficient to convert the "apples" *per se* into a different unit

of merchandise. But in United States v. Oakville Company, 402 F.2d 1016, 56 CCPA 1, C.A.D. 943 (1968), reversing and remanding in part Oakville Company v. United States, 58 Cust.Ct. 564, C. D. 3052 (1967), involving the application of paragraph 1615(a) of the 1930 Act—the predecessor of item 800.00—to common pins exported to Canada and returned to the United States as pins-in-rolls, our appeals court declined to regard the placement of the pins in paper tape rolls as constituting an alteration of the pins or change in their condition, distinguishing its ruling on this point in *Hallauer* as involving a situation where things were done to the apples in Canada beyond merely placing them in [different sized] boxes as against the situation in the *Oakville* case where nothing whatever was done to the pins to alter them or change their condition as *pins*.

Hence, it would appear from the principles evolved in the *Hallauer* and *Oakville* cases, that the test to be applied in item 800.00 cases · is whether the merchandise of American origin has itself (apart from its container) been the object of advancement in value or improvement in condition while abroad.

In the instant case it is clear that nothing more was done to the tomatoes themselves in Canada than that which is entailed in their physical transfer, with selectivity, from one size carton to a carton of a smaller size. And the mere sorting of the tomatoes as found in their natural condition did not advance their value or improve their condition *per se*. United States v. Sheldon, 2 Ct.Cust.Appls. 485, 492, T.D. 32245 (1912). There was no cleaning, wiping or individual wrapping of any of the involved tomatoes in Canada. Under all of the facts disclosed in this record we are of the opinion that the involved tomatoes have not been advanced in value or improved in condition while in Canada, and that the evidence supports plaintiff's claim for duty free entry pursuant to item 800.00 of the tariff schedules. And, in view of this conclusion it becomes unnecessary for us to consider plaintiff's alternative claim under item 806.20 of the tariff schedules.

The claim in the protest for duty free entry of the involved tomatoes pursuant to item 800.00 of the tariff schedules is sustained, and judgment will be entered herein accordingly.