(C.D. 4272)

THE YOUNG ENGINEERS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 21, 1971)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.

L. *Patrick Gray, III*, Assistant Attorney General (*Patrick D. Gill*, trial attorney), for the defendant.

Before Richardson and Landis, Judges, and Rosenstein, Senior Judge;
Richardson, J., dissenting

Rosenstein, Judge: The merchandise at bar, described on the invoices as "self-locking pannel [sic] nut", model numbers TYE–1001–08–4–S, TYE–1001–3–8–S, and TYE–1001–3–10–S, was assessed with duty at 17 per centum ad valorem as "fasteners" under TSUS item 646.42. Plaintiff contends that, although the merchandise is a type of fastener, it is properly classifiable as "nuts" of iron or steel under TSUS item 646.56 and its superior heading, thus taking a rate of only 0.2 cent per pound.

The competing provisions of the Tariff Schedules of the United States are as follows:

Classified:

| 646.42 | Cotters, cotter pins, and fasteners or holders (except nuts) used with screws, bolts, or studs, all the foregoing of base metal _____ | 17% ad val. |
|--------|---|---|

Claimed:

Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes, screw hooks and screw rings; turnbuckles, all the foregoing not described in the foregoing provisions of this subpart, of base metal:
    Of iron or steel:

| 646.56 | Nuts _____ | 0.2¢ per lb. |
|--------|---|---|

It is incumbent upon plaintiff to establish that the articles at bar, which are represented by exhibits 1–A and 1–B, are nuts and that they are in chief value of iron or steel, as required by General Headnote 9 (f) (i) which provides that—

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton", etc.), have the following meanings:
(i) "of" means that the article is wholly or in chief value of the named material;

and by General Interpretative Rule 10 (f) which provides—

(f) an article is in chief value of a material if such material exceeds in value each other single component material of the article;

Failure of proof of either element of plaintiff's claim will result in affirmance of the classification.

Finding on this record that plaintiff has failed to establish that the merchandise is in chief value of iron or steel and that, accordingly, the protest must be overruled, we need not reach the question whether they are nuts, as claimed.

The testimonial evidence regarding the composition of the imported articles consists solely of the following statement by the sales manager for the importer (R. 48):

Q. Have you on occasion been to Japan and seen these manufactured?—A. I have.

Q. Are they a single unit of steel, each, individually?—A. Yes.

Although the witness was not cross-examined on this point and his qualifications to testify thereto were not challenged, his statement is controverted by a report offered by plaintiff (exhibit 2) of certain tests run by an independent testing laboratory on "this merchandise", as it was characterized by plaintiff's counsel (R. 8).[1]

The tests were made, the report states, on locking panel nuts, numbers TYE–1001–08–4–S, TYE–1001–3–8–S, and TYE–1001–3–10–S, to evaluate their performance properties "in comparison with requirements established for equivalent size self-locking nuts covered under Military Specification MIL–N–25027C." The report notes, page 1, that—

The fasteners were identified as being fabricated from C–1137 carbon steel and furnished with a cadmium plate finish per Spec QQ–P–416A, Type II, Class 3.

and, at pages 4 and 5, that—

Rockwell hardness tests were taken by means of a Clark Superficial hardness test machine. Care was taken to remove plating from the test specimens.

\*       \*       \*       \*       \*       \*       \*

The results of the salt spray exposure tests indicated that the cadmium plating met specified requirements without evidence of corrosion or attack.

The federal specification for QQ–P–416 is listed in Military Specification MIL–N–25027C (exhibit 5) as "Plating, Cadmium (Electrodeposited)." The specification also states (page 3) that "Nuts fabricated from noncorrosion-resistant steel shall be cadmium plated in accordance with the applicable standard."

We conclude from the foregoing that the subject articles are made

---

[1] The head of the laboratory testified that samples "similar" to the instant merchandise were tested (R. 23).

of cadmium plated steel.[2] However, we are unable to determine whether they are in chief value of steel, as claimed. Certainly, it is not averred, much less shown, that the plating is *de minimis*, and we may not look dehors the record to determine which material exceeds the other in value. See Rule 10 (f) *supra*.

As plaintiff has failed to establish an essential element of its claim, the protest is overruled.[3]

Judgment will be entered accordingly.

DISSENTING OPINION

RICHARDSON, Judge: I dissent from the majority in this protest because the liquidation was not based on a "final appraisement."

According to a footnote in the majority opinion the official papers in this protest indicate the entry was liquidated on the same day of the appraisement, but since no appeal for reappraisement has been filed and the time therefor has expired, the majority considers the liquidation valid under the case of *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209, 326 F. Supp. 973 (1971).

This is a 1969 protest, and, according to Title I, Section 122 of The Customs Courts Act of 1970, and Rule 14.9 (b) (1) of The Rules of the Customs Court, it is governed by the law in effect prior to October 1, 1970. The liquidation in this protest is premature and void. The law in effect prior to October 1, 1970 as declared by the Court of Customs and Patent Appeals, and by this court in an unbroken chain of decisions, is that a liquidation of an entry prior to the expiration of the 60 days after appraisement in which the collector or district director might appeal for reappraisement is not upon a "final appraised value", is premature and void, and a protest against such liquidation must be dismissed as premature. *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936). See also: *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), *Biddle Purchasing Co. et al.* v. *United States*, 69 Treas. Dec. 880, T.D. 48320 (1936), *Ti Hang Lung & Co.* v. *United States*, 3 Cust. Ct. 268, C.D. 248 (1939), and *The New Home Sewing Machine Co.* v. *United States*, 62 Cust. Ct. 895, R.D. 11655 (1969). There can be no "final appraised value" until either the right of appeal has been exhausted, or the

---

[2] Classification under item 646.42 requires that the articles be "of base metal". This includes cadmium which is provided for as a base metal under TSUS item 632.14.

Exhibits 1–A and 1–B are of a pale gold color, thus indicating that the steel has received some plating or surface treatment.

[3] It appears from the entry papers that the appraisement and liquidation herein were effected on the same date. As no appeal for reappraisement has been filed and the time therefor has expired, the liquidation remains valid. *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209, 326 F. Supp. 973 (1971).

statute of limitations has run against such appeal. Only then can there be a legal liquidation.

The Second Division in the case of *John V. Carr & Son, Inc.* v. *United States*, C.D. 4209 (April 29, 1971), takes the position that the Court of Customs and Patent Appeals, and this court, prior to April 29, 1971, in using the word "void" to characterize a liquidation made prior to the expiration of the 60 days allowed for an appeal for reappraisement didn't really mean "void" but meant "voidable"; that it is legally wrong for the district director to liquidate prior to the expiration of the 60 days within which he may appeal, but his illegal act is merely "voidable," and the blemish of illegality in not waiting for a "final appraisement" before liquidating is automatically wiped off by the expiration of the 60 days without the district director filing an appeal for reappraisement.

The opinion in the *Carr* case, *supra*, relies upon 19 U.S.C.A., § 1501 (a) (section 501(a) of the Tariff Act of 1930) in attempting to establish a "final appraised value." That statute provides in the part relied upon as follows:

"(a) * * * The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court."

19 U.S.C.A., § 1501 would be pertinent here, if plaintiff was a party seeking an *appeal for a reappraisement*—an action against an appraising officer for his determination of an "appraised value." This is not such an action. This is a protest proceeding—an action against a collecting officer for his liquidation on a basis other than a "final appraised value," involved in 19 U.S.C.A., § 1503,—one of the three essential elements the collecting officer is required to use in liquidating an entry, whether or not there has been an appeal for a reappraisement. The other two elements are quantity and rate. He cannot liquidate until the appraisement has become a "final appraised value," and he has determined the other two elements (quantity and rate) entering into his liquidation.

The opinion in the *Carr* case, *supra*, does not cite any cases holding that a collector or district director may make a premature liquidation in contravention of the statute, 19 U.S.C.A., § 1503 (section 503 of the Tariff Act of 1930), as amended, which provides:

"(a) Except as provided in section 1562 of this title (relating to withdrawal from manipulating warehouses), the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the *final appraised value*." (Emphasis added.)

It has been judicially determined that an appraised value becomes final upon the expiration of a 60-day period absent the filing of an appeal for reappraisement, and that the collecting officer cannot liquidate until the appraisement has become a "final appraised value."

The premature liquidation was not an act which the collector or district director had the power to perform, but performed in an improper manner as the Court of Customs and Patent Appeals held the facts to be in the case of *Joseph Fischer* v. *United States*, 38 CCPA 143, 150, C.A.D. 452 (1951), cited in the *Carr* case. The collector or district director had no power to liquidate until there was "final appraisement," that is, after the 60 days for appeal had expired. Even that case made a distinction between what is merely "erroneous" and thus "voidable" and what is "illegal" and thus "void."

Whereas the opinion in the *Carr* case, *supra*, does not expressly state that the district director may waive the 60-day period within which he may appeal, the opinion implies as much.

The argument that the collector or district director be regarded as having waived his right to appeal by a premature liquidation was exploded in *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), where the collector liquidated an entry eleven days after the appraiser's report and thereafter filed an appeal for reappraisement on the fifty-ninth day. The court in permitting him to appeal for reappraisement did not regard the premature liquidation as a waiver of his right to appeal. The court at page 121 said:

"* * * The collector in this case had no appraised value upon which he could *legally* assess duty until after the 60-day period after the appraiser's return, within which he was authorized to file an appeal for a reappraisement, had expired." (Emphasis added.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"It is not within the power of the collector to destroy the authority granted him by Congress of filing an appeal for a reappraisement by liquidating an entry during the time within which he is authorized to file an appeal for a reappraisement of the merchandise. *The collector cannot destroy a legal right by the doing of an illegal act*." (Emphasis added.)

A waiver means to irrevocably relinquish a right that is beneficial to the individual. A person cannot make a waiver of a right and then later say "I have changed my mind. I take the waiver back." The 60-day period within which the collector or district director may ap-

peal is not a personal right or privilege to waive, but a right given the collector or district director on behalf of the United States Government to determine within a 60-day period whether in the public interest an appeal for reappraisement should be taken. He cannot shorten this 60-day period by a premature liquidation.

The *Lawrence Groom & Co.* case, *supra*, was decided on the basis of section 503 of the Tariff Act of 1922 which did not contain the expression "final appraised value." The court did use substantially similar language in its decision when it said: "In this case the appraised value of the merchandise did not become *final* and conclusive upon all parties so long as the right of appeal was vested in either of them." (Emphasis added.)

The expression "final appraised value" appeared for the first time in section 503 of the Tariff Act of 1930. Section 503 was amended in 1953, but Congress retained the expression "final appraised value," with a knowledge of the court's interpretation of the expression. If Congress had disapproved of the long standing judicial interpretation of what is meant by "final appraised value," it is submitted that it would have further amended the statute to indicate its disapproval. Its failure to do so evinces an intent to consider premature liquidations null, void and of no effect.

In the *Biddle Purchasing Co. et al.* case, *supra*, the majority of the court also rejected the contention that a liquidation prior to the expiration of the 60-day period constitutes a waiver of the 60-day waiting period for the appraisement to become final.

The Second Division, in its opinion in the *Carr* case, *supra*, states that in the *Biddle* case, *supra*, "* * * where no appeal was filed, the appraisement was not held void." The issue in the *Biddle* case, *supra*, was not whether the appraisement was void, but whether the liquidation was void. The court had the following to say on this issue, at pages 885 and 886 of its opinion:

> "It was only after sixty days from the date of the appraiser's report that the appraised value became final. Any liquidation made prior to the time when the appraisement becomes final is *void and without any force or effect. Such has been the holding of this court and the appellate court.*" (Emphasis added.)
>
> "* * * on March 23, 1936, in *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233, [the Court of Customs and Patent Appeals did] hold that the attempted liquidation of the entry prior to the expiration of the time within which to appeal for reappraisement was properly held by the trial court and the division to be *null and void.*
>
> "On the facts in the case at bar we so hold." (Emphasis added.)
>     At page 885.

\*        \*        \*        \*        \*        \*        \*

"* * * The date on which final appraisement became valid was provided for under existing law. Therefore the liquidation in question, having been made prior to the time allowed by law, viz, sixty days, when the appraisement became final, and during which period the collector had the right to appeal, was invalid. *"We therefore hold the liquidation of the entries covered by these protests null and void, and of no force and effect.* The protests are sustained." (Emphasis added.)

At pages 885–886.

The headnote in the *Biddle* case, *supra*, at page 880 also states:

"A liquidation made prior to the expiration of the sixty days allowed by law to the collector within which to appeal for reappraisement is *void*, as the appraisement by the appraiser does not become final and conclusive until such time has expired." (Emphasis added.)

Admittedly a headnote is no part of the decision in a case, but in this instance it does succinctly and accurately capsule the opinion.

The Customs Courts Act of 1970, effective October 1, 1970, changes the administrative procedure in appraisement and liquidation, but the same Act limits this court to applying the law in effect prior to October 1, 1970, in deciding protests, the trial of which began prior to October 1, 1970 (Title I, Section 122 of The Customs Courts Act of 1970). Also, Rule 14.9(b)(1) of the Rules of the Customs Court effective October 1, 1970 provides:

"All actions in which trials have commenced prior to October 1, 1970 shall be further processed and governed in accordance with the law and with the rules of the court in effect prior to October 1, 1970."

This protest was tried prior to October 1, 1970.

The liquidation herein is null and void by reason of its prematurity, and the protest filed herein against such void liquidation is premature, and must, therefore, be dismissed.